UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: ANDREW DEVELLIUS TILLMAN & MARION SHUNDRA TILLMAN | CASE NO. 11-04315-KMS |
| DEBTORS | CHAPTER 13 |
| COUNTRY CREDIT, LLC | PLAINTIFF |
| V. | ADV. NO. 12-00031-KMS |
| ANDREW DEVELLIUS TILLMAN & MARION SHUNDRA TILLMAN | DEFENDANTS |

## MEMORANDUM OPINION

This matter came before the Court for trial on October 31, 2012, (the "Trial") on the Amended Complaint Objecting to Dischargeability of a Debt (Adv. Dkt. No. 25) filed by creditor-plaintiff Country Credit, LLC ("Country Credit") and the Answer to Complaint (Adv. Dkt. No. 24) filed by debtors-defendants Andrew Devellius Tillman ("Mr. Tillman") and Marion Shundra Tillman ("Mrs. Tillman") (collectively referred to as the "Tillmans"). At Trial, Clinton Ashley Atkinson represented Country Credit and Richard R. Grindstaff represented the Tillmans. By stipulation, the parties introduced 12 exhibits. The exhibits and testimony of witnesses[1] were the only evidence presented at Trial. The Court, having considered the evidence, including the post-trial memorandum (Adv. Dkt. No. 32) filed by Country Credit, finds that the obligation owed to Country Credit by Marion Tillman is nondischargeable and the obligation owed to Country Credit by Andrew Tillman is dischargeable for the reasons set forth below.[2]

---

[1] Misty King, Manager of Country Credit; Stephen Binning, Owner of Country Credit; Andrew Tillman and Marion Tillman testified at Trial.

[2] Pursuant to Federal Rule of Civil Procedure 52, made applicable to this Adversary by Federal Rule of Bankruptcy Procedure 7052, the following constitutes the findings of fact and conclusions of law of the Court.

## I. JURISDICTION

The Court has jurisdiction of the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I).

## II. FINDINGS OF FACT

Andrew and Marion Tillman are joint debtors in the above styled Chapter 13 bankruptcy case that was filed on December 13, 2011. Each debtor owes a separate debt to Country Credit based on his or her individual loan. Neither debtor is liable for the other's obligation to Country Credit; the debts were incurred individually in separate transactions. Country Credit initiated the instant adversary proceeding alleging that the debts owed to it by each debtor are nondischargeable under 11 U.S.C. § 523(a)(2)[3] because the debtors failed to disclose payday loans allegedly outstanding at the time each debtor obtained their respective loan, it reasonably relied on the representations in each debtor's loan application, and that had it known about the alleged misrepresentation, it would not have made the loan to either debtor.

**Debt of Marion Tillman**

On October 1, 2009, Marion Tillman executed a promissory note and security agreement in favor of Country Credit in return for a loan in the principal amount of $2,690.70. This was not her first loan with Country Credit.[4] In connection with the transaction, Mrs. Tillman signed an application dated September 29, 2009 and completed by a Country Credit employee; and, on

---

[3] Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title 11 of the United States Code, unless otherwise noted.

[4] Mrs. Tillman testified that because she paid off her first loan with Country Credit, Regina, a Country Credit employee, initiated the renewal loan transaction with her.

October 1, 2009, she signed an application guarantee document,[5] attesting that all of her debts, including any outstanding payday loans, were disclosed on her application. The application does not reflect any outstanding payday loans as of the date of the application. (Ex. P-1). However, the evidence at Trial established that Mrs. Tillman obtained a payday loan from Brookhaven Check Cash on August 31, 2009. (Ex. P-4). On September 30, 2009, the day before signing the Country Credit promissory note and security agreement, Mrs. Tillman paid off the August payday loan and obtained another payday loan with Brookhaven Check Cash. (Ex. P-5). Thus, Mrs. Tillman falsely represented that she did not have a payday loan outstanding at the time she obtained her loan from Country Credit by signing an agreement guarantee document.

**Debt of Andrew Tillman**

On February 5, 2010, Andrew Tillman executed a promissory note and security agreement in favor of Country Credit for a loan in the principal amount of $2,421.74. This was not his first loan with Country Credit. In connection with the transaction, Mr. Tillman signed an application and application guarantee document, attesting that all of his debts were disclosed on his application, including any payday loans. The application did not identify any outstanding payday loans as of the date of the application. (Ex. P-7).

**Country Credit's Policy on Payday Loans**

Stephen Binning, an owner of Country Credit, represented that failing to disclose outstanding payday loans is a material misrepresentation about a debtor's financial condition because the existence of a payday loan is the single most determinative factor about the debtor's

---

[5] The term "application guarantee document" is the name used by Country Credit to identify a document included in its loan package in which a debtor attests that the application includes a listing of all debts, the list is true and complete, and "includes all debts including but not limited to . . . payday loans . . .", and that the debtor understands that the decision to extend the loan is based largely upon the application and that failure to fully disclose all the debtor's information truly and completely could constitute fraud." (Ex. P-2). The term "debts" is not defined but is construed against Country Credit to have its traditional meaning – money due by agreement, *see* Black's Law Dictionary 462 (9th ed. 2009), and does not include obligations that have been repaid.

ability to repay debts. According to Binning, the existence of a payday loan on an application is the clearest trigger for default[6] and for this reason, Country Credit does not extend loans to individuals with payday loans.[7]

### III. CONCLUSIONS OF LAW

**A. § 523(a)(2)**

Generally, "all debts arising prior to the filing of the bankruptcy petition will be discharged." *United States v. Coney*, 689 F.3d 365, 371 (5th Cir. 2012) (*citing In re Bruner*, 55 F.3d 195, 197 (5th Cir. 1995). "However, to ensure that the Bankruptcy Code's 'fresh start' policy is only available to 'honest but unfortunate debtor[s],' Congress has provided that certain types of liabilities are excepted from the general rule of discharge." *Id.* In particular, § 523(a)(2)(A) and (a)(2)(B) are intended to protect victims of fraud. In these instances, "Congress evidently concluded that the creditors' interest in recovering full payment of debts in these categories outweighed the debtors' interest in a complete fresh start." *Norris v. First Nat'l Bank in Luling (In re Norris)*, 70 F.3d 27, 29 (5th Cir. 1995).

Country Credit asserts that the debts owed to it by Mr. and Mrs. Tillman, individually, are excepted from discharge under § 523(a)(2)(A) and (a)(2)(B).[8] The Fifth Circuit recently

---

[6] Based on his experience in consumer lending, Binning discussed his view of the "cycle" of payday loans, the "snowball" effect and the underlying problem that the borrower's budget "is not working for them."

[7] Misty King's testimony corroborated Country Credit's policy of not extending loans to individuals with payday loans. The Court notes that *none* of Country Credit's documents advise potential borrowers of this policy.

[8] Section 523(a)(2) provides in pertinent part:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

noted the distinctions between these two provisions in *Bandi v. Becnel (In re Bandi)*, 683 F.3d 671, 674-75 (5th Cir. 2012):

> Some debts for value obtained by means of a fraudulent statement are dischargeable under § 523(a)(2), and others are not. Debt for property or other value obtained by fraud is broadly rendered nondischargeable by § 523(a)(2)(A), but that subsection carves out certain debt that follows a transfer of value or extension of credit obtained by "a statement" regarding the debtor's "financial condition" and makes that debt dischargeable. However, certain other debt that follows a transfer of value or extension of credit obtained by "a statement" regarding the debtor's "financial condition" is rendered nondischargeable by § 523(a)(2)(B). Under this subsection, if a statement respecting the debtor's or an insider's financial condition is in writing, materially false, reasonably relied upon by the creditor, and the debtor made the statement with intent to deceive, the debt obtained by the fraud is not discharged.
>
> . . . .
>
> The Supreme Court has described these two subsections as "two close statutory companions barring discharge," the first of which pertains to fraud "not going to financial condition" and the second of which pertains to "a materially false and intentionally deceptive written statement of financial condition upon which the creditor reasonably relied."

*In re Bandi*, 683 F.3d at 674-75.

In order to prevail on its claims under § 523(a)(2)(B), Country Credit bears the burden of proving each of the four required elements by a preponderance of the evidence.[9] *Grogan v. Garner*, 498 U.S. 279, 287-88 (1991); Gen. *Elec. Capital Corp. v. Acosta (In re Acosta)*, 406

---

(B) use of a statement in writing--
    (i) that is materially false;
    (ii) respecting the debtor's or an insider's financial condition;
    (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
    (iv) that the debtor caused to be made or published with intent to deceive;

11 U.S.C.A. § 523(a)(2)(A), (B).

[9] "A fact is proven by a preponderance of the evidence if the Court finds it more likely than not the fact is true." *Lanier v. Futch (In re Futch)*, Adv. No. 09-00144-NPO, 2011 WL 576071, at *16 (Bankr. S.D. Miss. Feb. 4, 2011) (*citing EPA v. Sequa Corp. (In re Bell Petroleum Servs., Inc.)*, 3 F.3d 889, 909-10 (5th Cir. 1993)).

F.3d 367, 372 (5th Cir. 2005). The individual debts are nondischargeable to the extent each debt was obtained by the use of a statement in writing:[10]

> **(i)** that is materially false;
>
> **(ii)** respecting the debtor's or an insider's financial condition;[11]
>
> **(iii)** on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> **(iv)** that the debtor caused to be made or published with intent to deceive.

§ 523(a)(2)(B); *In re Norris*, 70 F.3d at 29. To prevail on its claim under § 523(a)(2)(A), Country Credit must prove by a preponderance of the evidence that the debt owed to it was obtained by false pretenses, a false representation,[12] or actual fraud,[13] other than a statement respecting the debtor's or an insider's financial condition."[14]

---

[10] "As long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met." *Tower Credit, Inc. v. Williams (In re Williams)*, 431 B.R. 150, 157 n.16 (Bankr. M.D. La. 2010) (*citing Cadle Co. v. Orsini*, 2007 WL 1006919, at *5 (E.D. Tex. 2007)). The parties do not dispute this requirement.

[11] "'[A] statement respecting the debtor's or an insider's financial condition' as used in § 523(a)(2) was meant to embody terms commonly understood in commercial usage rather than a broadly descriptive phrase intended to capture any and all misrepresentations that pertain in some way to specific assets or liabilities of the debtor. The term 'financial condition' has a readily understood meaning. It means the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities." *In re Bandi*, 683 F.3d at 676. "Section 523(a)(2)(B) applies not only to documents styled as 'Financial Statements', but to any false statements made in written loan applications." *FDIC v. Lefeve (In re Lefeve)*, 131 B.R. 588, 593 (Bankr. S.D. Miss. 1991). The parties do not dispute the writing requirement.

[12] Under § 523(a)(2)(A), a representation made by a debtor is a false pretense or false representation if the it was: (1) a knowing and fraudulent falsehood; (2) describing past or current facts; (3) that was relied upon by the other party. *AT&T Universal Card Servs. v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001); *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292-93 (5th Cir. 1995); *In re Futch*, 2011 WL 576071, at *17; *Green v. Carle (In re Carle),* Adv. No. 09-5055, 2010 WL 5394793, *6 (Bankr. W.D. Tex. Dec. 28, 2010).

[13] In contrast with false pretense or false representation, a party objecting to discharge of a debt under § 523(a)(2)(A) for *actual fraud* must demonstrate that: (1) that the debtor made representations; (2) that the debtor knew the representations were false at the time they were made; (3) that the representations were made with the intention and purpose to deceive the creditor; (4) that the creditor actually and justifiably relied on the representations; and (5) that the creditor sustained a loss as a proximate result of its reliance. *In re Acosta*, 406 F.3d at 373 (*citing In re Mercer*, 246 F.3d 391, 403 (5th Cir. 2001)).

[14] The reliance standard under § 523(A)(2)(A) requires justifiable, not reasonable, reliance. *In re Acosta*, 406 F.3d at 372 (*citing In re Mercer*, 246 F.3d at 404).

Although the preponderance of the evidence standard governs Country Credit's burden, the Court must strictly construe exceptions to discharge against the creditor and liberally construe them in favor of the debtor. *In re Futch*, 2011 WL 576071, at *16; *Fezler v. David (In re Davis)*, 194 F.3d 570, 573 (5th Cir. 1999); *Hudson v. Raggio & Raggio (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997); *Jordan v. Se. Nat'l Bank (Matter of Jordan),* 927 F.2d 221, 224 (5th Cir.1991) (rationale of reading nondischargeability provisions narrowly "is to help preserve the Code's basic policy of giving an honest debtor a fresh start").

**1. Country Credit failed to sustain its burdens under § 523(a)(2)(A) and (a)(2)(B), therefore, the debt of Mr. Tillman is dischargeable.**

**a.    § 523(a)(2)(B)**

Country Credit failed to sustain its burden to prove that Mr. Tillman made a materially false statement in writing under § 523(a)(2)(B). Mr. Tillman testified that he first obtained payday loans after obtaining his renewal loan with Country Credit and therefore his application does not contain any false statements. In support of its allegation that Mr. Tillman falsely represented that he did not have any outstanding payday loans at the time he obtained the loan, Country Credit relies on vague statements made by Mrs. Tillman at the Tillmans' § 341 meeting of creditors.[15] However, her statements do not establish by a preponderance of the evidence that

---

[15] In its post-trial memorandum Country Credit stated the following as to Mrs. Tillman's testimony at the meeting of creditors:

> At the meeting of creditors held on January 19, 2012, the Tillmans were questioned about their payday loans, and Mrs. Tillman state that she and Mr. Tillman had been dealing with about a dozen payday lenders for "over two or three years." She agreed that they had been making payday loans in 2008, 2009, and 2010, and further stated that "several of them were both joint together and several of them were like separate or whatever."

(Pl.'s Br. Adv. Dkt. No. 32). The relevant testimony at the meeting of creditors is as follows:

> Q. . . . You guys on your last bankruptcy listed about a dozen payday loans. How have you guys dealt with those payday lenders?

Mr. Tillman had any *outstanding* payday loans *at the time* he obtained his loan from Country Credit. Mrs. Tillman's representation that she and Mr. Tillman had been dealing with payday lenders "over two *or* three years" does not establish that Mr. Tillman had a payday loan on February 5, 2010. (emphasis added). In addition, contrary to Country Credit's counsel's use of the conjunction "and" in his arguments at Trial, the question posed to Mrs. Tillman individually[16] established that *she* had dealt with payday lenders in "2008 *or* 2009 *or* 2010." (emphasis added). The Court finds that Mrs. Tillman's testimony at the meeting of creditors is insufficient to establish that Mr. Tillman, more likely than not, had an outstanding payday loan at the time he obtained his loan with Country Credit.

The Court rejects Country Credit's argument that Mr. Tillman had a duty to speak at the meeting of creditors to correct any misstatement by Mrs. Tillman, as it appears that there was no

---

A. (By Mrs. Tillman) Over two or three years.

Q. Your last bankruptcy was filed October 2010.

A. Um-hum.

Q. And you have been dealing with them a couple years prior to that?

A. (By Mrs. Tillman) Yeah.

Q. So about 2008 or 2009 or 2010?
A. (By Mrs. Tillman) Yeah.

. . . .

Q. (By Mr. Binning) Can I ask one more question? Those payday lenders, did both y'all get those loans or just one of you?

A. Both. I think several of them were both joint together and several of them were like separate or whatever.

Meeting of Creditors Tr. 7:19-8:4, 8:24-3.

[16] The question posed by Mr. Binning addressed Mrs. Tillman directly as opposed to both Mr. and Mrs. Tillman. *Compare* (Tr. 7:20-21) "how have *you guys* been dealing with those payday lenders?"; (Tr. 8:24-9:3) "did *both y'all* get those loans . . ." *with* (Tr. 7:25-8:4) in the terms of "and *you* have been dealing with them a couple of years prior to that? . . So about 2008 or 2009 or 2010?".

testimony in need of correction. Moreover, at the Trial, Misty King, manager of Country Credit, contradicted Country Credit's position, acknowledging that there is no evidence of any fraud or misrepresentation in Country Credit's files or records as to Mr. Tillman. Country Credit failed to sustain its burden under § 523(b)(2)(B)(i), and therefore, the debt owed to Country Credit by Mr. Tillman is dischargeable.

In the alternative, Country Credit argues that even if Mr. Tillman did not have a payday loan at the time he obtained his renewal loan, it would not have made a loan to Mr. Tillman had it known about Mrs. Tillman's payday loans. Country Credit provides no basis in law for the proposition that Mr. Tillman had some duty to disclose the debts of his spouse, neither do the application and related loan documents require Mr. Tillman to disclose debts of his spouse for which he is not liable. Therefore the Court finds no merit in this argument.

### b. § 523(a)(2)(A)

Likewise, Country Credit failed to sustain its burden to prove that the debt owed to it by Mr. Tillman is nondischargeable under § 523(a)(2)(A). As discussed above, under § 523(a)(2)(A), oral misrepresentations or omissions can render a debt nondischargeable only if they are not about the "financial condition" of the debtor.[17] In its post-trial brief, Country Credit asserts that the "Tillmans' omissions regarding their payday loans amount to false representations." However, any such omission would involve a "statement respecting the debtor's financial condition," because it concerns the general overall financial condition of the debtor. *In re Bandi*, 683 F.3d at 767 (financial condition "means the general overall financial condition of an entity or individual, that is, the overall value of property and income as compared to debt and liabilities."). Even assuming the alleged omissions do not relate to the debtor's

---

[17] Financial condition misrepresentations are made nondischargeable under § 523(a)(2)(B), but only if they are in writing. *Steves v. Labella (In re Steves)*, 11-50817, 2012 WL 2989110, at *2 (5th Cir. July 23, 2012) (unpublished).

financial condition, the evidence established that there was no misrepresentation as to Mr. Tillman because there is no evidence that Mr. Tillman had an outstanding payday loan at the time he renewed his loan with Country Credit.

### 2. Country Credit sustained its burden under § 523(a)(2)(B); therefore, the debt of Mrs. Tillman is nondischargeable.

Country Credit sustained its burden to prove that Mrs. Tillman intentionally made a false statement in writing respecting her financial condition by failing to disclose an outstanding payday loan on her application. The evidence established that Mrs. Tillman had an outstanding payday loan with Brookhaven Check Cash when she applied for and obtained a renewal loan from Country Credit. (Exs. P-4, P-5). As Binning testified, this false statement was material because Country Credit would not have made the loan had it known about the outstanding payday loan. Country Credit reasonably relied on the application because there were no "red flags" that would have alerted it to the misrepresentation. The credit report did not indicate the existence of any payday loans and Mrs. Tillman signed an application guarantee document attesting that any payday loans were disclosed in her application.

Mrs. Tillman disputes the element of intent, arguing that she was truthful in her application and that she was not asked about any payday loans when she obtained her renewal loan. However, Mrs. Tillman's lack of care when signing the application indicates a reckless disregard for the accuracy of the information and supports a finding that she intended to deceive Country Credit. *See In re Williams*, 431 B.R. at 155-56. Having found the debt excepted from discharge under § 523(a)(2)(B), the Court need not address Country Credit's claim under § 523(a)(2)(A).

### B. Attorney's Fees

Pursuant to § 523(d),[18] if the court rules against the creditor on the creditor's request for a determination as to the dischargeability of a consumer debt under § 523(a)(2) and there are no special circumstances that would make such award unjust, "the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified." § 523(d); *Carthage Bank v. Kirkland*, 121 B.R. 496, 499 (S.D. Miss. 1990) ("by its express terms, section 523(d) mandates an award of attorney's fees to a prevailing debtor unless the court determines the facts of the case to fall within the exceptions to that provision"); *Eric D. Fein, P.C. & Assoc. v. Young (In re Young)*, Adv. No. 09-4054, 2010 WL 795113, at *1 (Bankr. E.D. Tex. Mar. 8, 2010); *FIA Card Servs., N.A. v. Knoche (In re Shahidulla)*, 465 B.R. 511, 513 (Bankr. D. Minn. 2012). The purpose of this provision is to discourage creditors from bringing objectively weak nondischargeability actions in hopes of inducing a settlement from a debtor anxious to avoid paying attorney's fees to defend the action. Collier on Bankruptcy P 523.08[8] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *In re Shahidulla*, 465 B.R. at 513 ("Congress added this cost-shifting provision to 'reduce the pressure on the honest individual debtor to settle this type of nondischargeability claim for the sole purpose of avoiding attorney's fees and costs of litigation.'") (internal citations omitted). An award of attorney's fees under § 523(d) is within the court's sound discretion. *In re Young*, 2010 WL 795113, at *2.

---

[18] Section 523(d) states in its entirety:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. § 523(d).

The Court finds that Country Credit initiated the nondischargeability action under § 523(a)(2), the loan at issue concerns a consumer debt,[19] and the debt of Mr. Tillman was held to be dischargeable.  The Court further finds that Country Credit was not substantially justified in relying on the vague testimony of Mrs. Tillman at the § 341 meeting of creditors as the basis for its action against Mr. Tillman and that there are no special or unique circumstances that would make an award of costs and attorney's fees unjust.  Therefore, Mr. Tillman's request for attorney's fees is granted.

Although § 523(d) is not a basis for awarding attorney's fees and costs to a prevailing *creditor*, the creditor may be entitled to attorney's fees and costs if the creditor has a contractual right to them under state law. *Jordan*, 927 F.2d at 226-27 (Section 523(d) does not prevent award of attorney's fees and costs to creditors so entitled as a matter of contract under state law). Pursuant to the Disclosure Statement, Promissory Note, and Security Agreement, upon default by borrower, the lender is entitled to attorney's fees and court costs of thirty-three and one-third percent (33 1/3%) of the unpaid balance.[20] (Ex. P-3, at 2).  Thus, Country Credit is entitled to

---

[19] "The term 'consumer debt' means debt incurred by an individual primarily for a personal, family, or household purpose." 11 U.S.C. § 101(8).

[20] The loan document states:

> DEFAULT AND ACCELERATION: Upon default by Borrower, Lender may (i) bring suit for the delinquent payments without accelerating the remaining balance and/or (ii) declare the remaining balance immediately due and payable, less any rebate of unearned Finance Charges as provided for above; and Borrower shall pay any court costs and attorneys fees of 33 1/3% of the unpaid balance. After contractual maturity, or after default and acceleration, Borrower shall pay Lender interest on the delinquent amount at the rate of 10% per annum.
>
> Borrower shall be in default upon (1) Failure to pay any payment in full; (2) Failure to perform any agreement herein; (3) Any representation made or furnished to Lender by Borrower proves to have been false in any material respect; (4) Loss, theft, substantial damages, destruction, sale or encumbrance to or of the Collateral, or the making of any levy, seizure or attachment thereof or thereon; (5) Death; (6) Lender reasonably deems itself insecure; (7) Failure to perform any agreement or covenant contained in the Deed of Trust.

(Ex. P-3, at 2).

attorney's fees and court costs as to Mrs. Tillman in the amount of 33 1/3% of her unpaid balance.

## IV. CONCLUSION

**THERFORE IT IS ORDERED** that the debt owed to Country Credit by Andrew Tillman is dischargeable and Mr. Tillman's request for attorney's fees and costs is **GRANTED**.

**IT IS FURTHER ORDERED** that the debt owed to Country Credit by Marion Tillman is nondischargeable pursuant to § 523(b)(2)(B). Further, Country Credit is entitled to attorney's fees and costs pursuant to its contract and limited to thirty-three and one-third percent (33 1/3%) of the unpaid balance on Mrs. Tillman's account.

**IT IS FURTHER ORDERED** that Grindstaff shall file within 14 days a fee itemization for defending the adversary proceeding against Mr. Tillman so that the Court may enter a final judgment.

**SO ORDERED**.

_____
Katharine M. Samson
United States Bankruptcy Judge
Dated: November 30, 2012